**Jacquelyn T. BUTLER, Plaintiff,**

v.

**ALBANY INTERNATIONAL, Defendant.**

**Civil Action No. 01–F–1318–N.**

United States District Court,
M.D. Alabama,
Northern Division.

July 29, 2003.

Alvin T. Prestwood, Linda Sue Wellman, Prestwood & Associates PC Montgomery, AL, for plaintiff.

Charles A. Powell, IV, Baker Donelson Bearman Caldwell & Berkowitz PC, Thomas A. Davis, Jonathan Toby Dykes, Constangy, Brooks & Smith, Birmingham, AL, for defendant.

### MEMORANDUM OPINION AND ORDER

FULLER, District Judge.

Plaintiff, Jacquelyn T. Butler, filed a Complaint (Doc. # 1) on November 9, 2001, bringing claims of gender-based pay discrimination pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.* (hereinafter "Title VII") and the Equal Pay Act, 29 U.S.C. § 206(d). On February 14, 2002, Defendant, Albany International (hereinafter "Albany") filed an Answer (Doc. # 4).

This action is presently before the court on the motion for summary judgment filed by the defendant on April 23, 2003 (Doc. # 14). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court concludes that the motion for summary judgment is due to be GRANTED.

## I. FACTS[1] AND PROCEDURAL HISTORY

### A. *Employment Background*

Plaintiff, a female, has been employed with Albany[2] for almost twenty-five years. She was hired in September of 1978 as an Incentive Clerk with a pay grade level 6 ($7,072 annual base salary).[3] A few months later, in January of 1979, Plaintiff became an Incentive and Purchasing Clerk.[4] However, it was not until a year later, January of 1980, that Plaintiff's pay grade level was increased to level 8 ($9,300 annual base salary). In April of 1985, Plaintiff was promoted to Production Control Clerk and her pay grade level was increased to level 10 ($14,800 annual base salary).[5]

On June 1, 1988, the Production Control Coordinator, and Plaintiff's supervisor, Robert Hooper (hereinafter "Hooper"), received a promotion to Weaving Shift Supervisor. Due to Hooper's promotion, Plaintiff was promoted to the position of Production Control Coordinator[6] and was directed to report to Larry Paschall (hereinafter "Paschall"), Albany's Plant Manager (Butler Dep., Ex. 1). Notwithstanding the new position, Plaintiff's pay grade level remained at level 10 ($16,700 annual base salary[7]).

In this new position, Plaintiff's duties included: performing warp planning in conjunction with Division Production Control, scheduling looms, printing tickets, issuing warp tickets, issuing cut forms, planning and organizing shipping as needed with independent trucking contractors, supervising regular and emergency truck drivers, working with Production Schedulers in Portland and Menasha, working with customer service, sales and technical persons, interacting with Group Leaders and Team Leaders, planning and organizing the Plant Physical Inventory on an annual basis, attending scheduling meetings, attending and recording minutes for morning meetings, checking for stock, issuing manufacturing tickets, entering daily production reports from Manufacturing into the computer, ordering raw materials through Division Production Control, issuing alteration orders to Manufacturing on a daily basis, compiling and distributing the weekly plant production report, sched-

1. This recitation of "facts" is based upon materials presented by the parties, viewed in the light most favorable to the plaintiff.

2. Albany, a Delaware-based company, produces a consumable fabric called paper machine clothing which is used on all paper machines to produce every grade of paper from lightweight sanitary tissue to heavyweight container board. Appleton Wire, a division of Albany, has a plant in three locations: (1) Montgomery, Alabama; (2) Portland, Tennessee; and (3) Menasha, Wisconsin.

3. Salaries at Albany are based on pay grade and employees are not told their pay grades.

4. Plaintiff's pay grade level remained at level 6.

5. Albany's historical records indicate that Plaintiff received periodic raises in her annual base salary (Madson Aff., Ex. A).

6. This fact is disputed. Albany avers that Plaintiff was not promoted to the position of Production Control Coordinator, but instead argues that her title was changed to Production Control Scheduler and presents a historical record which indicates that Plaintiff had the job classification of "Prod. Scheduler" on June 1, 1988 (Madison Aff., Ex. A). However, contrary to Albany's averment, an announcement dated May 18, 1988 indicates that Plaintiff "ha[d] been promoted to Production Control Coordinator ... and [would] report to [Paschall] in her new position." (Butler Dep., Ex. 1).

7. Despite Plaintiff's pay grade level remaining at level 10, she received periodic raises in her annual base salary (Madson Aff., Ex. A).

uling fabrics, distributing date changes to finishing, changing dates on tickets in Weaving and Seaming, and working the expedite list. On April 1, 1995, Plaintiff's pay grade level was increased to level 12 ($25,800 annual base salary).

## B. Gender–Based Discrimination Claims

Plaintiff bases her claims of discrimination on a comparison of her wages with those of a male co-worker, Bill Smith (hereinafter "Smith"). Smith began his employment with Albany in August of 1968 as a pern winder. After about six months, Smith moved to the position of weaver. Two to three years later, Smith transferred to the Appleton, Wisconsin plant[8] to fulfill a supervisory position. Smith remained at the Appleton plant for three years, and returned to the Montgomery plant as a Seaming Supervisor. In this position, Smith has a pay grade level of level 17 ($20,600 annual base salary). In April of 1983, Smith was moved to the position of Finishing Supervisor and maintained a pay grade level of level 17 ($28,-000 annual base salary).[9]

On January 18, 1989, Smith became Production Control Coordinator. An announcement dated for said date indicates that: (1) Smith "[would] move to production control as Montgomery Production Control Coordinator, reporting to [Paschall]," (2) Plaintiff "[would] report to [Smith] in her current job as Production Control Scheduler," and (3) Joe Lunsford "[would] move to Finishing as Finishing Supervisor, filling the opening created by [Smith's] moving to Production Control." (Butler Dep., Ex. 2). According to Smith, Plaintiff trained him[10] and they constantly[11] performed the same tasks.[12] Notwithstanding these similarities, at that time, Smith's pay grade level remained at level 17 ($37,600 annual base salary) and Plaintiff's pay grade level remained at level 12 ($18,900 annual base salary).[13]

Over eleven years later, in May of 2000, Smith returned to the Manufacturing Department. An announcement dated May 2, 2000 indicates that Smith, "currently Production Control Coordinator, [would] move to the Finishing Department as a Finishing Team Leader, effective May 29, 2002" and that Plaintiff, "currently Production Scheduling Coordinator, [would] assume the responsibilities of Production Control Coordinator, effective June 1, 2000." (Butler Dep., Ex. 3). The announcement further indicated that Plaintiff would report to Ted Bryant (hereinafter "Bryant"), Human Resources and Office Services Manager, and that Corlis Miles (hereinafter "Miles"), Plant Secretary, "[would] maintain her current duties while assuming the additional responsibility of assisting [Plaintiff] in Production Control, effective May 8, 2000." (Id.). At that time, Plaintiff's grade level was at level 12

---

**8.** The plant located in Appleton, Wisconsin is Albany's central headquarters and is the location for all of Albany's customer service employees.

**9.** Akin to Plaintiff, Smith received periodic increases in his salary, however during his long employment with Albany, Smith retained a pay grade level of level 17 (Madson Aff., Ex. B).

**10.** Albany avers that Smith had an understanding of the basic functions performed by

Production Control, but Plaintiff trained him on the daily responsibilities of his job.

**11.** The evidence indicates that their duties were subsequently modified.

**12.** See Smith Dep., at pp. 21–22.

**13.** Albany's historical records indicate that Plaintiff received periodic raises over the years and, on June 1, 1988, had an annual base salary of $18,900. Her annual base salary increased to $19,900 on April 1, 1989 (Madson Aff., Ex. A).

($30,700 annual base salary) [14] and Smith's grade level was at level 17 ($56,100 annual base salary).

On June 1, 2000, Plaintiff assumed the responsibilities of Production Control Coordinator and reported to Bryant.[15] Plaintiff's duties in this position includes the following: issuing cut stock tickets to manufacturing; supervising one full-time truck driver; planning and organizing shipping as needed with independent trucking contractors; attending and recording the minutes of the morning meetings on Monday, Wednesday and Friday; attending warp planning meetings every six weeks; attending scheduled meetings; working with group leaders and team leaders; working with customer services, sales and technicals as needed; planning and organizing the plant physical inventory on an annual basis; checking for stock; issuing warp tickets; reviewing "hot fabrics" list at the morning meetings; conducting monthly cycle counts on inventory; and working with production schedulers in Portland and Menasha.[16]

### C. Procedural History

After complaining of unequal treatment and receiving an unsatisfactory response,[17] Cazalet gave Plaintiff no reason for the pay disparity (Butler Dep., at p. 134–135). Plaintiff filed a written charge with the Equal Employment Opportunity Commission (hereinafter "EEOC") on May 17, 2001, alleging sex discrimination under Title VII and "adverse treatment" in violation of the Equal Pay Act (Compl., Ex. A). The EEOC issued a Notice of Right to Sue Letter on September 14, 2001 (Compl., Ex. B), and Plaintiff filed a timely suit in this court seeking back pay, front pay, interest, liquidated damages, and attorney fees (Doc. # 1, Compl).

On April 23, 2003, Albany filed a motion for summary judgment (Doc. # 14). Plaintiff filed her response to the motion on May 16, 2003 (Doc. # 20), and on May 23, 2003, Defendant filed a reply (Doc. # 21).

### II. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. §§ 2000e to 2000e–17 (Title VII of the Civil Rights Act of 1964 as amended). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations supporting both.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court is to construe the evidence

---

14. Albany's historical records indicate that Plaintiff continued to receive periodic raises during Smith's tenure as Production Control Coordinator and, on April 1, 2000, had an annual base salary of $30,700. Her annual base salary increased to $31,900 on October 1, 2000 (Madson Aff., Ex. A).

15. Currently, Plaintiff reports to Jeff Johnston, Albany's Production Manager (Johnston Aff., ¶ 5).

16. (Johnston Aff., ¶ 5). Plaintiff's pay grade level remains at level 12.

17. On October 1, 2000, Plaintiff received a $1,200 salary raise. However, after receiving the raise, Plaintiff expressed some disappointment to Bryant. As a result, on January 19, 2001, Plaintiff met with Bryant and George Cazalet (hereinafter "Cazalet"), Albany's Southern Manufacturing Manager to discuss her disappointment. In the meeting, Plaintiff expressed to Cazalet and Bryant that she was disappointed about her salary raise because she "expected that she should have been brought up to the level of [Smith]." (Cazalet Dep., at p. 65).

and factual inferences arising therefrom in the light most favorable to the nonmoving party.[18]

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard can be met by the movant, in a case in which the ultimate burden of persuasion at trial rests on the nonmovant either by submitting affirmative evidence negating an essential element of the nonmovant's claim or by demonstrating that the nonmovant's evidence itself is insufficient to establish an essential element of his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The burden then shifts to the nonmovant to make a showing sufficient to establish the existence of an essential element to its claims, and on which it bears the burden of proof at trial. To satisfy this burden, the nonmovant cannot rest on its pleadings, but must, by affidavit or by other means, set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). If the nonmoving party does not respond to a motion for summary judgment, the court may grant a motion for summary judgment in favor of the moving party, if defendant's presentation is sufficient to justify the court's conclusion. *Id.*

The court's function in deciding a motion for summary judgment is to determine whether there exist genuine, material issues of fact to be tried; and if not, whether the movant is entitled to judgment as a matter of law. *See Dominick v. Dixie Nat'l Life Ins. Co.*, 809 F.2d 1559 (11th Cir.1987). It is substantive law that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also De Long Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499 (11th Cir.1989).

When a court considers a motion for summary judgment, it is to refrain from deciding any material factual issues. All evidence and inferences drawn from the underlying facts must be viewed in the light favorable to the nonmovant. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990). The movant bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V/ Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Consideration of a motion for summary judgment does not lessen the burden on the nonmoving party, i.e., the nonmoving party still bears the burden of coming forth with sufficient evidence on each element that must be proved.[19]

---

**18.** The Supreme Court explained that:

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of

the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted). *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996).

**19.** "[I]f on any part of the prima facie case there would be insufficient evidence to require submission of the case to a jury, . . . [the

## IV. DISCUSSION

### A. Introduction: Gender–Based Discrimination in the Workplace

██ This case involves the application of two statutes passed by Congress to help eradicate gender-based discrimination in the workplace: Title VII and the Equal Pay Act. Gender-based discrimination in rates of pay to employees, whether male or female is prohibited by the Equal Pay Act of 1963 (hereinafter "EPA"), which is a portion of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206(d) (1976), as well as by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* "The [EPA] was directed only at wage discrimination between the sexes and forbids the specific practice of paying unequal wages for equal work to employees of the oppo-site sex." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir.1992).[20] "Title VII, on the other hand, forbids discrimination on the basis of gender, race, or national origin in a wide range of employment practices, including hiring, firing, training and promoting." *Id.*[21] Hence, "Title VII and the EPA exist side by side in the effort to rid the workforce of gender-based discrimination." *Id.* at 1527. Nonetheless, the burdens of proof are different under the two statutes,[22] thus this court will address independently Plaintiff's Title VII and EPA claims.

### B. Title VII

██ As mentioned above, Title VII prohibits an employer from discriminating

---

court must] grant summary judgment [for the defendant]." *Earley*, 907 F.2d at 1080 (citations omitted). In *Earley*, the Court of Appeals further emphasized:

> "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

> \* \* \*

> If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted) (emphasis added); *accord Hudson v. Southern Ductile Casting Corp.*, 849 F.2d 1372, 1376 (11th Cir. 1988). *Earley*, 907 F.2d at 1080–81. *Earley*, 907 F.2d at 1080. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548. The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

**20.** Specifically, the EPA provides that:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishments at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions . . .

> 29 U.S.C. § 206(d)(1).

**21.** Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

**22.** As noted by the Eleventh Circuit in *Miranda,*

> A plaintiff suing under the [EPA] must meet the fairly strict standard of proving that she performed substantially similar work for less pay. The burden then falls to the employer to establish one of the four affirmative defenses provided in the statute. Under . . . Title VII, however, there is a relaxed standard of similarity between male and female-occupied jobs, but a plaintiff has the burden of proving an intent to discriminate on the basis of sex . . .

against its employees on the basis of sex. 42 U.S.C.A. § 2000e–2(a)(1). In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established the allocation of the burden of production and an order for the presentation of proof in discrimination cases. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Almost twenty-years later, in *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518 (11th Cir.1992), the Eleventh Circuit promulgated that the *McDonnell Douglas* burden-shifting approach is the appropriate framework for evaluating an employee's claim of gender-based wage discrimination. Under the *McDonnell Douglas* approach, a plaintiff has the initial burden of establishing a prima-facie case of unlawful discrimination by a preponderance of the evidence. 411 U.S. at 802, 93 S.Ct. 1817. A prima-facie case requires "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." *International Broth. of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

■ The Eleventh Circuit has explained that, for the disparate treatment cases where direct evidence [23] is not present, a plaintiff establishes a *prima facie* case of gender-based wage discrimination under Title VII by demonstrating that she is female and that the job she occupied was similar to higher paying jobs occupied by males. *See Miranda*, 975 F.2d at 1529. If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to rebut the presumption by demonstrating a legitimate, non-discriminatory reason for the pay disparity. *Id.* (citing *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 255–256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). This intermediate burden is "exceedingly light.'" *Id.* (citing *Perryman v. Johnson Products, Inc.*, 698 F.2d 1138, 1142 (11th Cir.1983)). The employer has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Burdine*, 450 U.S. at 253–255, 101 S.Ct. 1089.

Once the employer satisfies this burden of production, the presumption of discrimination is eliminated and the "burden returns to the plaintiff to establish by a preponderance of the evidence that the proffered justifications are actually a pretext for gender-based discrimination." *Miranda*, 975 F.2d at 1529. In other words, the plaintiff must demonstrate that a discriminatory reason more likely than not motivated the employer to pay her less, or that the employer's explanation is not worthy of belief. *See id.* (citations omitted).

■ The record before the court indicates that Plaintiff has carried her burden of proof and established her *prima facie* case. Plaintiff's description of the type of duties she performed as Product Control Coordinator, as well as Smith's deposition testimony,[24] established that she shared the same tasks as Smith when he was in the same position.[25] Moreover, as indicat-

---

975 F.2d at 1526.

**23.** Because Plaintiff offers nothing which could conceivably be considered direct evidence, the Court will analyze this motion for summary judgment under the circumstantial evidence paradigm.

**24.** Smith testified that he and Plaintiff "did the same things." (Smith Dep., at pp. 21–22.)

**25.** The court understands that some of these tasks were changed over time due to technological advances and the Production Control Department's shift to operating through computers, however the undisputed evidence indicates that during the time period in which Plaintiff worked side by side with Smith in this department the two shared the same tasks.

ed in Albany's May 2, 2000 announcement, Plaintiff assumed the responsibilities of Production Control Coordinator due to Smith's departure from the position (Butler Dep., Ex. 3). Hence, although the responsibilities of Production Control Coordinator may have altered over the years, the substantive portion of those responsibilities remained associated with that position and were unaltered. The undisputed evidence also demonstrates that Smith, while Product Control Coordinator, received an annual base salary which was over $20,000 more than the annual base salary Plaintiff received as Product Control Coordinator. Accordingly, Plaintiff has established a *prima facie* case of discrimination, thus shifting to Albany the burden of producing a legitimate, non-discriminatory reason for the pay disparity. *Miranda*, 975 F.2d at 1529.

■ Albany maintains that Plaintiff received a pay grade level 12 in the position of Production Control Coordinator because the pay grade level for that position is a level 12. Albany avers that the pay disparity between Smith and Plaintiff was attributable to his prior manufacturing experience and to allow his return to the Manufacturing Department. Albany presented evidence that Smith was moved to the Production Control Department because Paschall was receiving complaints from the Appleton, Wisconsin plant about Plaintiff not providing information in an efficient manner, and Paschall believed that Smith, as Production Control Coordinator, could improve the situation. Paschall, however, wanted to leave the window open for Smith to return to the Manufacturing Department, so Paschall allowed Smith to retain his current pay grade of level 17 when he moved to the Production Department. Paschall testified that all employees retain their current pay grade level when "they move from one department to another" (Paschall Dep., at p. 28), so Smith's pay grade level was not de-

creased from level 17 to 12 when he moved from the Manufacturing Department to the Production Department.

Accordingly, on the surface, these reasons appear legitimate and Albany has met its burden to refute the inference of discrimination in the pay disparity. It is clearly a legitimate business decision to transfer an employee from one department to the next while allowing the employee to retain his or her current pay grade level. Accordingly, the court is not in the position of second-guessing the decisions made by employers in the course of their business. *See Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir.1999) (federal courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision."). It is well-established that the federal courts should not serve as "super-personnel department[s] that reexamine[ ] an entity's business decisions." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir.2000) (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991)). Hence, with Albany articulating a non-discriminatory reason for the pay disparity, the burden shifts back to Plaintiff to demonstrate that this stated reason was a pretext for gender discrimination.

■ With the burden returning to Plaintiff's shoulders, Plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered non-discriminatory reasons is pretextual. Plaintiff, however, fails to carry her burden. Upon review of the evidence before the court, the court finds that Plaintiff has failed to produce *any* evidence for a reasonable factfinder to conclude that Albany's proffered reason for the pay disparity is pretextual. *See*

*Chapman, supra.* ("[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered ... reasons is pretextual."). Plaintiff has not come forward with any evidence that questions the veracity of Albany's reason for the pay disparity or reveals any discriminatory animus on the part of Albany. Moreover, Plaintiff has offered *no* evidence to support her assertion of discrimination, instead she simply reaches that conclusion because of her inability to "surmise" anything else. *See* Butler Dep., at p. 131 ("The only thing that I could possibly surmise [for the pay disparity] would be that he was male and I'm female"). Here, Plaintiff has merely presented unsubstantiated assertions which, alone, are not enough to withstand a motion for summary judgment. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Accordingly, as a result of this failure to create a triable issue of fact as to Albany's asserted reasons, summary judgment in favor of Albany is due to be granted on this claim.[26]

### C. Equal Pay Act

As aforementioned, the EPA prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work. *See* 29 U.S.C. § 206(d)(1). When Congress enacted the EPA, its purpose was

> to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry—the fact that the wage structure in many segments of American industry

has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same.

*Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974) (citations omitted).

To establish a *prima facie* case under the EPA, the plaintiff must show "that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Miranda,* 975 F.2d at 1532 (quoting *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)). *Accord, Irby v. Bittick,* 44 F.3d 949, 954 (11th Cir.1995). Thus, establishing the *prima facie* case requires comparison of the plaintiff's work and earnings to that of a person of the opposite sex; the person of the opposite sex to whom a plaintiff compares herself, or in this case, himself, for purposes of showing a wage discrepancy is referred to as a "comparator." *Gosa v. Bryce Hosp.,* 780 F.2d 917, 918 (11th Cir.1986).

A court's resolution of a plaintiff's claim that the work she performed is "equal" to that of the comparator does not depend simply on a comparison of job titles or classifications, but on a comparative analysis of actual job requirements and performance. 29 C.F.R. § 1620.13(e); *Pearce v. Wichita County, City of Wichita Falls, Tex., Hosp. Bd.,* 590 F.2d 128, 133 (5th Cir.1979)[27] (while the job title is enti-

---

26. The court recognizes that Albany asserts numerous arguments in support of its conclusion that Plaintiff's Title VII claim should be dismissed as a matter of law. However, because the court finds that Plaintiff's failure to establish pretext is dispositive, the court declines to express an opinion on any of the remaining arguments proffered by Albany.

27. In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

tled to some weight in the assessment of comparative responsibility the actual job content is dispositive). Thus, in addressing whether an EPA plaintiff and his comparator have performed equal work within the meaning of the *prima facie* case, a court must examine the effort,[28] skill,[29] and responsibility [30] of the plaintiff and the comparator.

"The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." *Waters v. Turner, Wood, & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir.1989).

> When Congress enacted the Equal Pay Act, it substituted the word "equal" for "comparable" to show that "the jobs involved must be virtually identical, that is, they would be very much alike or closely related to each other." The restrictions in the Act were meant "to apply only to jobs that are substantially identical or equal."

*Brennan v. City Stores, Inc.*, 479 F.2d 235, 238 (5th Cir.1973). Moreover, binding precedent from the Eleventh Circuit recognizes that

> "[b]y substituting the term 'equal work' for 'comparable work,' which was originally suggested, Congress manifested its intent to narrow the applicability of the Act." Congress intended to permit employers wide discretion in evaluating work for pay purposes. Thus, although employees do not have to prove jobs are identical, they have the heavy burden of proving "substantial identity of job functions."

*Waters*, 874 F.2d at 799 (quoting *Hodgson v. Golden Isles Convalescent Homes, Inc.*, 468 F.2d 1256, 1258 (5th Cir.1972)). Accord, *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992) ("The jobs held by the employees of opposite sexes need not be identical; rather, they need only be substantially equal.").

▪ A court examining whether jobs are substantially equal must examine the actual duties of the positions because the "controlling factor under the Equal Pay Act is job content—the actual duties that the respective employees are called upon to perform." *Pearce v. Wichita County, City of Wichita Falls, Tx., Hosp. Bd.*, 590 F.2d 128, 133 (5th Cir.1979). Indeed, where a plaintiff's job does not include additional significant responsibilities performed by the comparators who are paid more money, the requisite substantial identity of job functions requirement of the *prima facie* case is not met, and the employer is entitled to summary judgment. *Waters*, 874 F.2d at 800.

▪ "Once a *prima facie* case is demonstrated, to avoid liability the employer must prove by a preponderance of the evidence that the differential is justified by one of four exceptions set forth in the EPA." *Irby*, 44 F.3d at 954 (internal quotations and citations omitted). The four affirmative defenses available to the employer are: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on

---

**28.** "Effort" as that term is used in connection with a *prima facie* case under the EPA "is concerned with the measurement of the physical or mental exertion needed for the performance of a job." *Pearce*, 590 F.2d at 133 (quoting 29 C.F.R. § 800.127 (1977)).

**29.** "Skill," on the other hand, is used to refer to factors such as "experience, training, edu-

cation, and ability." *Id.* (quoting 29 C.F.R. § 800.125 (1977)).

**30.** "Responsibility" is used to refer to the "degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." *Id.* (quoting 29 C.F.R. § 800.130 (1977)).

any additional factor other than sex. *See* 29 U.S.C. § 206(d)(1). Importantly, a defendant invoking an affirmative defense under the EPA must show that the factor of sex provided no basis for the wage differential. *Id. Accord, Gosa,* 780 F.2d at 918 (the *requirements for proving* an exception are not met unless the factor of sex provides no part of the basis for the wage differential). A defendant's burden in establishing the application of one of the exceptions is a heavy one.[31] *See Gosa,* 780 F.2d at 918; *also Mulhall v. Advance Security, Inc.,* 19 F.3d 586, 592 n. 12 (11th Cir.1994). *See Corning Glass Works,* 417 U.S. at 196–97, 94 S.Ct. 2223. When the defendant overcomes the burden, the plaintiff must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential. *Irby,* 44 F.3d at 954. The plaintiff is not required to prove discriminatory intent on the part of the defendant. *Miranda,* 975 F.2d at 1533. If the plaintiff is able to create the inference of pretext, there is an issue which should be reserved for trial. *Irby,* 44 F.3d at 954.

For the purposes of this motion for summary judgment, the court assumes that Plaintiff has established a *prima facie* case under the EPA[32] and thus focuses its analysis on two issues: (1) whether Albany has met its burden to prove by a preponderance of the evidence that the pay differential is justified by one of four exceptions set forth in the EPA, and (2) whether Plaintiff has produced sufficient evidence to conclude that the Albany's proffered explanation is "pretextual or offered as a post-event justification for a gender based differential." *Irby,* 44 F.3d at 954.

Albany argues that the pay disparity was unrelated to Plaintiff's sex and relies on the "factor other than sex" exception to explain the pay differential in this case. Section 206(d)(1)(iv). The requirements for proving that exception are not met "unless the factor of sex provides no part of the basis for the wage differential." *Morgado v. Birmingham–Jefferson County Civil Defense Corps,* 706 F.2d 1184, 1187–1188 (11th Cir.1983); *Mulhall,* 19 F.3d at 590. Albany contends that Smith's pay was "red circled" and avers that his higher pay rate was attributable to his transfer from one department to the other while retaining the same pay rate. Albany asserts that Smith's retention of his higher pay rate was pursuant to a company policy of moving employees from department to department at the same pay rate rather than to downgrade or demote them. *See* Paschall Dep. at p. 28.

Generally defined, the term "red circled" describes "certain unusual, higher than normal, wage rates which are maintained for many reasons." 29 C.F.R. § 800.146. The courts and the Department of Labor have recognized that Congress intended to include the practice of "red circling" as a section 206(d)(1)(iv) "factor other than sex" defense to explain a wage differential. *Mulhall,* 19 F.3d at 595. "An example of legitimate red circling is when an employer transfers an employee from a skilled job to a less demanding position but continues to pay the transferee at the higher pay rate in order to have her available again when needed in the former job." *Id.* at 596. The Eleventh Circuit acknowledges red-circling where current employees are transferred to lower paying positions but

---

**31.** An employer bears only a burden of production in Title VII, but must prevail on an affirmative defense under the EPA by the burden of both production and persuasion.

**32.** The court notes that Plaintiff has alleged facts sufficient to create a fact question concerning the "equal work" requirement and that there is testimony in Plaintiff's deposition sufficient to create a fact question on this issue.

retain their higher pay. *Id. See also Gosa,* 780 F.2d at 918.

Accordingly, Albany has offered an appropriate explanation for the pay differential at issue. Smith's salary was clearly "red circled," due to a department transfer; that is, his pay was higher than a person would normally receive for the work he was performing because he had transferred from a higher to a lower position with no reduction in pay. Albany's policy of paying transferred employees their previous salary is not based upon sex, and appears reasonable. Smith's higher pay rate was determined pursuant to this reasonable, sex-neutral business policy, and therefore, fits within the "factor other than sex" exception to the EPA. *See Blocker v. AT & T Tech. Sys.,* 666 F.Supp. 209 (M.D.Fla.1987) (employer's sex-neutral business policy of paying displaced employees their previous salary fit within the "factor other than sex" exception to the EPA). Obviously, Paschall's deposition testimony, explaining the basis for the pay differential, is the kind of specific evidence that removes Albany from the parameters of the EPA.[33]

■■■ With Albany having established that the pay disparity was justified by "factors other than sex," Plaintiff is required to rebut Albany's explanation with some affirmative evidence. Plaintiff has failed to produce *any* evidence creating a genuine issue of material fact with respect to whether this reason is pretextual. No reasonable jury could find based on this evidence that Plantiff's gender was the reason for the pay disparity. Accordingly, Albany's motion for summary judgment is due to be granted.[34]

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Albany International's motion for summary judgment (Doc. # 14) is GRANTED. It is further ORDERED that the pretrial hearing scheduled in this case is CANCELED.

The Clerk of the Court is DIRECTED to remove the above-styled case from the trial docket.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

### *FINAL JUDGMENT*

In accordance with the prior proceedings, opinions, and orders of the Court, it is the ORDER, JUDGMENT, and DECREE of the Court that:

(1) Judgment be and is hereby entered in favor of the Defendant, Albany Interna-

---

**33.** Moreover, the court notes that Albany has also presented Bryant's deposition testimony which corroborates Paschall's testimony and Albany's position:

I do know that [Hooper] and [Smith] came into the production control area having had previous manufacturing experience. And when I say that, I'm talking about people that started as hourly employees, worked rotating shifts, spent many, many hours, days, months, years on the production floor, which obviously put them in a different pay grade. And they came into that [Product Control Coordinator] job, and the company was not going to punish them by reducing their salary simply because the company asked them to come in and do a

job.... [T]he biggest difference is that these two people—[Hooper] and [Smith]—were in jobs previously that were higher grade, and the company was simply not going to cut their pay. That would not have been fair to them. And the facts show that both men did return to manufacturing. [Hooper] eventually returned to be a weaving supervisor, and [Smith] returned to be a finishing supervisor.

(Bryant Dep., at pp. 49–50).

**34.** Because the court finds that Plaintiff's failure to establish pretext is dispositive, the court declines to express an opinion on any of the remaining arguments proffered by Albany in relation to Plaintiff's EPA claim.

tional, and against the Plaintiff, Jacquelyn T. Butler.

(2) Costs are taxed against Plaintiff, Jacquelyn T. Butler, for which execution may issue.

The Clerk of the Court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.