Beverly A. WATERS,
Plaintiff–Appellant,

v.

**TURNER, WOOD & SMITH INSUR-
ANCE AGENCY, INC.,**
Defendant–Appellee.

No. 88–8526.

United States Court of Appeals,
Eleventh Circuit.

June 6, 1989.

Gerald Cunningham, Atlanta, Ga., for plaintiff-appellant.

Annette E. Ball, Clark, Paul, Hoover & Mallard, Atlanta, Ga., for defendant-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

This appeal arises from a district court order granting summary judgment for an employer under the Equal Pay Act. The court held that the employee failed to establish a prima facie case because the job responsibilities she performed were not substantially equivalent to the job responsibilities of male employees. We affirm.

I. Background

The Turner, Wood, & Smith Insurance Agency (Turner) employs both insurance agents and administrative personnel. Insurance agents, whose positions have no written job descriptions, must possess Georgia insurance licenses to sell insurance. Turner described the duties and qualifications of two classes of sales agents: "outside sales" agents and "inside sales" agents.[1]

The "outside sales" agents, who are responsible for soliciting and generating all

---

**1.** Waters insists she never heard Turner use these terms during her employment with the agency. Instead, she claims Turner used the phrase "male agents" to describe the "outside sales" agents. Harold Smith, Turner's president, testified that in his twenty-four years with the company, the agency had only two female "outside sales" agents: June Wayne, whose agency merged with Turner, and Janet Allred, who Turner hired two months after Waters quit. Turner Deposition, at 59–60.

renewal and new business for both personal and commercial lines, are paid on a pure commission basis. They are also personally responsible for paying for substantiated errors and omission claims and bad debts on their accounts. The "outside sales" agents meet with clients at their homes or offices and with engineers to inspect premises. They are required to sign employment contracts that include a non-competition agreement.

The "inside sales" agents handled walk-in, call-in, and company-generated (versus agent-generated) clients. They also handled referrals from other agents and employees. "Inside sales" agents handled only new (versus renewal) business and turn the new clients over to a customer service representative for processing. Like "outside sales" agents, they were also responsible for substantiated error and omission claims up to $2,500 and were required to sign a two-year covenant not to compete against Turner. Finally, "inside sales" agents handled only personal insurance lines, not commercial lines.

Turner employed Waters in the administrative position of Personal Lines Customer Service Representative from June 12, 1984 through June 24, 1987. She was paid a fixed salary.[2] Customer Service Representatives generally worked full-time on account processing. For instance, Waters was responsible for processing approximately 1500 insurance accounts. Turner claims that Waters' duties were the same as other Customer Service Representatives except she occasionally "backed up" Peggy Dodd in "inside sales" after Waters obtained her Georgia insurance license in January, 1986.[3]

Although Waters never filled in for the "outside sales" agents, she filled in for Dodd when Dodd was out of the office. Waters claims she spent from fifty to as much as ninety percent of her time selling insurance and performed the same duties as other "inside sales" agents on a day-to-day basis including walk-in, call-in, and producer-generated clients. She asserts that although she was initially not responsible for renewal and new business, she began generating new and renewal business in January, 1986. Waters claims she handled a few commercial lines accounts although she and Dodd were instructed to refer all commercial business to "outside sales" male agents. She claims she performed no "outside sales" work because Turner prohibited female agents from doing so. Turner disputes all of Waters' assertions.

Waters sought the payment of commissions from Turner on several occasions. Turner, however, denied her requests. After confronting Turner's president twice in 1986, Turner paid Waters a one time commission payment of $500.00 in an attempt to resolve any misunderstandings. She, however, continued to receive a straight salary. Waters, who left her job with Turner and currently works as an agent for another insurance agency, filed this action alleging an Equal Pay Act violation.

Turner moved for summary judgment contending that Waters did not establish a prima facie case because she failed to show that (1) she was paid less than male insurance agents, and (2) she performed work which was substantially equivalent to the work of male agents. The district court denied summary judgment on the first ground but granted summary judgment for Turner on the second. Waters appeals the district court's order.

## II. Discussion

Waters makes two arguments. First, she claims that the district court erred in finding that the work she performed was not substantially the same as male sales agents. She contends that the additional duties of the "outside sales" male agents do not sufficiently alter the basic equality between her position and "outside sales" positions. Second, she claims she satisfied

---

2. She also had responsibilities for a special project Harold Smith, Turner's president, had assigned her. Her additional responsibilities for the project, however, did not include any insurance sales activities.

3. Waters disagrees with Dodd being characterized as an "inside sales" person.

the prima facie case for an Equal Pay Act claim because Turner precluded her from performing "outside sales." She asserts that an employer should not be able to avoid Equal Pay Act liability by prohibiting qualified females from performing duties that males perform. This very argument establishes that Waters' claim is essentially one that is based on sex discrimination under Title VII, discussed *infra* in part B.

## A. Substantial Identity of Job Functions

■ The prima facie case under the Equal Pay Act[4] requires that an employee show "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974); *Pearce v. Wichita Cty., City of Wichita Falls, Texas, Hospital Board,* 590 F.2d 128, 133 (5th Cir.1979).[5] The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high.

> When Congress enacted the Equal Pay Act, it substituted the word "equal" for "comparable" to show that "the jobs involved must be virtually identical, that is, they would be very much alike or closely related to each other." The restrictions in the Act were meant "to apply only to jobs that are substantially identical or equal."

*Brennan v. City Stores, Inc.,* 479 F.2d 235, 238 (5th Cir.1973) (footnote omitted). Similarly, in *Hodgson v. Golden Isles Conva-*

*lescent Homes, Inc.,* 468 F.2d 1256 (5th Cir.1972), the court stated "[b]y substituting the term 'equal work' for 'comparable work,' which was originally suggested, Congress manifested its intent to narrow the applicability of the Act." *Id.* at 1258. Congress intended to permit employers wide discretion in evaluating work for pay purposes. *Id.* Thus, although employees do not have to prove jobs are identical, they have the heavy burden of proving "substantial identity of job functions." *Id.* Waters has failed to meet this burden.

Waters argues that because she occasionally filled in for Dodd, she is entitled to the benefits of an "outside sales" position including commissions. Her argument's premise is that Dodd held an "outside sales" position.[6] Waters' bootstrapping argument, however, is unavailing. The district court properly held that Waters failed to establish that she performed work which was substantially equivalent to the work of "outside sales" male agents. In particular, Waters failed to demonstrate that her job entailed substantially the same responsibilities as male "outside sales" agents.

"The controlling factor under the Equal Pay Act is job content—the actual duties the respective employees are called upon to perform." *Pearce,* 590 F.2d at 133 (citation omitted). Turner identified seven of nine "outside sales" duties not performed by Waters: (1) soliciting and generating renewal and new business; (2) responsibility for both personal and commercial accounts;[7] (3) responsibility for paying substantiated error and omission claims up to $2,500; (4) responsibility for bad debts on

---

**4.** The Equal Pay Act provides, in relevant part, that:

> No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions....

29 U.S.C. § 206(d) (1978).

**5.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (in banc), this court adopted as

binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

**6.** Waters does not claim that she filled in for any other sales agents, "inside" or "outside," other than Dodd.

**7.** Waters stated that she handled one commercial account for Billy Joe Barnett and gave quotes on several others. She, however, could not recall ever advising anyone on commercial accounts.

accounts; (5) outside work;[8] (6) meeting with clients outside the agency office; and (7) meeting with engineers to inspect premises. The fact that Waters' job did not include these additional significant responsibilities [9] defeats her Equal Pay Act claim because there is no substantial identity of job functions between her Customer Service Representative position (including filling in for Dodd) and the "outside sales" positions. *See, e.g., Beall v. Curtis,* 603 F.Supp. 1563, 1578–79 (M.D.Ga.1985) (no prima facie case because physician's assistant's responsibilities greater than those of nurse practitioner), *aff'd,* 778 F.2d 791 (11th Cir.1985). The district court, therefore, properly held that Waters failed to raise a genuine factual issue as to whether her job responsibilities were substantially similar to those of "outside sales" male agents.

### B. Equal Pay Act v. Title VII

■ Waters also contends that an employer should not be able to avoid Equal Pay Act liability by prohibiting qualified females from performing duties that males perform. She argues that she could have established the requirement of equal work had Turner granted her request to become a full-time commissioned sales agent. Turner asserts that Waters' argument amounts to a Title VII claim and ignores contrary Equal Pay Act precedents.

Turner's position must prevail based on two former Fifth Circuit cases which have rejected Waters' contentions. In *Hodgson v. Golden Isles Convalescent Homes, Inc.,* 468 F.2d 1256 (5th Cir.1972), the Secretary of Labor brought an Equal Pay Act action against the employer claiming that nurse's aides (females) and orderlies (males) were paid unequal wages for the performance of substantially equal work. In addressing the issue whether the exclusion of females

or males from a particular job supports an Equal Pay Act claim the court stated:

> We do not here decide whether the job of orderly should be open to females, or whether the job of nurse's aide should be open to males. Those questions are to be resolved in actions under Title VII ... Courts must be cautious not to apply improperly one Congressional act to achieve a purpose for which another was intended. We here decline, nevertheless, to sanction the concept that only males can perform the work of an orderly. We decide only that the evidence supports the finding that the work done by the orderly ... was sufficiently different from the work done by the aide to justify different pay scales.

*Id.* at 1258–59. In addition, in *Hodgson v. Brookhaven General Hospital,* 436 F.2d 719, 727 (5th Cir.1970), the court specifically rejected a Title VII approach to Equal Pay Act claims. "The purposes of the Equal Pay Act and Title VII of the Civil Rights Act of 1964 are not well served by confounding the respective proofs required of the plaintiffs." *Id.; see Beall,* 603 F.Supp. at 1578 (nurses denied same opportunity to take night calls as physician's assistants falls within Title VII).

Waters' reliance on *EEOC v. Madison Community Unit School District No. 12,* 818 F.2d 577 (7th Cir.1987) is misplaced because the *Madison* court clearly did not abandon the requirement of equal work. Instead the court merely disallowed the "factor other than sex" defense when employers use gender in creating job classifications. Further, Waters' reliance on *Brennan v. Prince William Hospital Corp.,* 503 F.2d 282 (4th Cir.1974), *cert. denied,* 420 U.S. 972, 95 S.Ct. 1392, 43 L.Ed.2d 652 (1975), is also misplaced. Again, the *Brennan* court did not abandon the equal work requirement. Instead the court held that *artificial* job classifications, such as where "qualified female em-

---

**8.** Waters stated she went outside the office to take pictures of property and get applications signed but was later apparently instructed not to do work that would take her outside the office.

**9.** "Responsibility is concerned with the degree of accountability required in the performance

of the job, with emphasis on the importance of the job obligation." *Pearce,* 590 F.2d at 133 (citing 29 C.F.R. § 800.130 (1977) which was removed in 1987). These additional duties significantly increased the accountability and importance of the "outside sales" positions.

ployees are not given the opportunity to do the extra work" males supposedly perform, do not preclude an inquiry into equality of work.

The well-established principles in the *Golden Isles* and *Brookhaven* decisions preclude Waters' arguments. As the district court noted, Waters has stated a potential Title VII action, not a violation of the Equal Pay Act. Waters simply cannot dress a Title VII claim in Equal Pay Act clothes.[10] Under the Equal Pay Act, Waters must establish that she was paid less in a job which is "substantially similar" to that of the male "outside sales" agents. She has failed to make such a showing.

### III. Conclusion

The district court properly held that Waters failed to establish that her job, which included her occasional backup of Dodd, was substantially similar to the position male "outside sales" agents held. Further, Waters cannot base an Equal Pay Act claim on Turner's failure to place her in an "outside sales" position. The district court's summary judgment order is therefore AFFIRMED.

10. The Equal Pay Act prohibits unequal pay for equal work. In contrast, Title VII reaches a broader range of sexually discriminatory employment practices.