Larry NIXON, Plaintiff,

v.

AUTAUGA COUNTY BOARD OF EDUCATION, et al., Defendants.

Civil Action No. 02–F–415–N.

United States District Court, M.D. Alabama, Northern Division.

July 29, 2003.

Kimberly G. Kervin, Carol Diane Cook, Kervin & Cook, LLC, Prattville, AL, for plaintiff.

James R. Seale, Erika P. Tatum, Hill, Hill, Carter, Franco, Cole & Black, Montgomery, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

FULLER, District Judge.

### I. INTRODUCTION

In March of 2002, Larry Nixon (hereinafter "Nixon") filed this suit in the Circuit Court of Autauga County, Alabama[1] against the Autauga County Board of Education and numerous individual defendants. The sole claim set forth in Nixon's Complaint arises under the Equal Pay Act (hereinafter "EPA"). Specifically, Nixon contends that he was paid less than a female co-worker. This cause presently before the Court on the Motion for Summary Judgment on Behalf of Defendants Autauga County Board of Education, Larry Butler, Dot Waller, Jerry De Bin, Ledronia Goodwin, Ken Hollon, Joe Turner, Paul Young, and Purvis Johnson (Doc. # 13) filed on April 24, 2003.

### II. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction or ven-

---

1. Invoking this Court's subject matter jurisdiction over claims pursuant to a federal stat- ute, Defendants removed the action to this Court in April of 2002.

ue, and the Court finds adequate allegations supporting both.

### III. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir.2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir.2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995) (internal marks and citations omitted)).

### IV. FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

The Autauga County Board of Education (hereinafter "the Board") employs Nixon as a bus driver. Nixon began working for the Board in 1995 on a part time basis, and in April of 1996, he became a

full time bus driver. Nixon drives a school bus in the morning and the afternoon during the school year and transports children in grades seven through twelve.

The Board pays all regular bus drivers in its employ according to the same salary schedule. Nixon does not dispute the fact that all regular bus drivers are paid according to this scale. According to this schedule, regular bus drivers with more than one year of experience, like Nixon, all receive the same annual salary regardless of whether they are male or female. The Board has paid Nixon according to the salary schedule applicable for the school year for each year in which he has been employed as a regular bus driver.

Nixon's contention of inequality of pay arises from the fact that for a period of time the Board paid a female bus driver named Marilyn Smith (hereinafter "Smith") fifteen dollars a day in addition to the pay she received under the regular salary scale. Nixon admits that the Board justifies this disparity by pointing out that in addition to driving her regular route, Smith drove a second route by which she transported a child, who did not live in the area of her regular route from that child's home to the Autauga County Alternative School (hereinafter "the Alternative School"). Nixon also transported students to the Alternative School. The Board did not give him additional compensation for transporting these students. All but one of the students resided along the route which constituted Nixon's regular route. The one student who did not live on Nixon's route was only transported from the Prattville Junior High School (hereinafter "the Junior High School") to the Alternative School in the morning and from the Alternative School to the Junior High School in the afternoon. It is undisputed that Nixon never had to make a separate circuit of his route to pick up the students he carried to the Alternative School and

that he never had to pick up students out of his regular zone; rather, he picked up his Alternative School students from along his regular route at the same time he picked up students going to the Junior High School and the Senior High School.

From April of 1996 when Nixon became a full-time regular driver until March 30, 2003, Nixon drove the same route each school day. In the morning, Nixon started his route at 320 Robinson Street. After several stops to pick up children, he would go to the Junior High School. From the Junior High School he drove to Prattville High School (hereinafter "the Senior High School"). Nixon then drove from the Senior High School to the Alternative School. After leaving the Alternative School, Nixon would complete his morning duties by parking the bus.

In the afternoon, Nixon started his route at the Alternative School. He drove from there to the Junior High School. One of the children he picked up at the Alternative School would get off the bus at the Junior High School and transfer onto a bus driven by Gail McCain which would take him home. The other children would stay on Nixon's bus and he would deliver them home after making a stop to pick up more students from the Senior High School.

Nixon was not the only bus driver transporting students to the Alternative School. Smith and John Wesley Hunter ("Hunter") were also transporting students to the Alternative School. Hunter drove students from out in various locations outside the Prattville city limits, but within Autauga County. Smith picked up a male student, who lived in a different zone than the zone in which she drove her regular route, and transported him to the Alternative School. After making this run, she would then run her regular route. In the afternoons, she also transported the Alternative School

student home, making a separate trip from her regular route. According to Nixon, both Hunter and Smith were being paid money each day in addition to their salary on the regular scale. Hunter told Nixon he received an additional $15.00/day to go to the Alternative School. Nixon also identified Charles Brown (hereinafter "Brown") as being a driver who was paid an additional $15/day for transporting students to the Alternative School. Nixon admits that he was not the only driver to transport students to the Alternative School without being paid additional compensation above the regular bus driver pay scale, Nixon admits that Patricia Anderson (hereinafter "Anderson") also transported some Alternative School kids without getting extra compensation for it.

Thus, it is undisputed that there were five drivers who transported students to the Alternative School: Nixon, Hunter, Smith, Brown, and Anderson. Three of these drivers were male and two of them were female. Two of the three male drivers received additional compensation for transporting the students. One of the two female drivers received additional compensation for transporting the students. All drivers who received additional compensation for transporting the students drove students to the Alternative School who were not on their regular routes. Nixon and Anderson, who were not compensated for their trips to the Alternative School, transported students who were on their regular routes to the Alternative School.

When Nixon learned that some drivers were being given additional compensation for taking students to the Alternative School, he complained to Young, who was then the Director of Transportation. Young told Nixon that his route did not have a significant deviation and did not warrant an additional amount of pay.

At some point after Nixon filed this lawsuit, the Board started using a "utility driver" to drive a route which picked up and dropped off all of the students attending the Alternative School. Once this practice was established, neither Nixon nor Smith drove students to the Alternative School. Nixon filed this suit pursuant to the EPA seeking declaratory and injunctive relief, including back pay. Nixon also demanded an award of attorney's fees and costs. Nixon named the Board as a defendant to the action, but he also named the six individuals who serve on the Board: Larry Butler (hereinafter "Butler"), Dot Waller (hereinafter "Waller"), Jerry De Bin (hereinafter "De Bin"), Ledronia Goodwin (hereinafter "Goodwin"), Ken Hollon (hereinafter "Hollon"), and Joe Turner (hereinafter "Turner"). Nixon also named the former Director of Transportation, Paul Young (hereinafter "Young"), and the current Director of Transportation, Pervis Johnson (hereinafter "Johnson").

## V. DISCUSSION

### A. Official Capacity Claims

 Nixon's claims against the six individuals who currently serve on the Board and the current Director of Transportation in their official capacities are due to be dismissed. Official capacity claims exist to "impose [ ] liability on the entity" that the officials represent, and not on them as individuals. *Welch v. Laney*, 57 F.3d 1004, 1008 (11th Cir.1995). Thus, Claims against Johnson, Butler, Waller, De Bin, Goodwin, Hollon, and Turner in their official capacities are properly regarded as a suit against the Board itself. *See, e.g., Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir.1991) (claims against officials in their official capacities are functionally equivalent to claims against the entity that they represent); *Blalock v. Dale County Bd. of Educ.*, 33 F.Supp.2d 995, 998–99 (M.D.Ala.1998). Where, as here, the prop-

er defendant is Nixon's employer and that employer, the Board, has already been made a defendant, official capacity claims against members of the Board and Nixon's supervisor are redundant and due to be dismissed. *See, e.g., Godby v. Montgomery County Bd. of Educ.,* 996 F.Supp. 1390, 1404 (M.D.Ala.1998).

█ Nixon's claims against Young, the former Director of Transportation, in his official capacity are also due to be dismissed. Where, as here, a defendant no longer holds a position at the time the suit is filed, it is inappropriate to bring suit against him in the official capacity he possessed while he held the position. *See, e.g., Williams v. Goldsmith,* 4 F.Supp.2d 1112, 1122–23 (M.D.Ala.1998). Simply put, because Young was no longer serving as Director of Transportation at the time Nixon filed suit, he cannot name Young in his official capacity of Director of Transportation because Young no longer possesses such a capacity and no longer represents the Board. Even if Young were still Director of Transportation, it would not be necessary for the Court to retain him as a defendant in his official capacity. Such claims are redundant to the claims against the Board and may be dismissed because the Board is a defendant. *See, e.g., Williams,* 4 F.Supp.2d at 1121–22 & n. 12; *Godby,* 996 F.Supp. at 1404.

### B. Individual Capacity Claims

█ All defendants other than the Board have also moved for summary judgment on the claims against them in their individual capacity because they contend that they are not Nixon's employer within the meaning of the EPA. The EPA defines employer as including:

> any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization.

29 U.S.C. § 203(d). Courts applying this statutory definition have indicated the importance of the following criteria to their analysis: (1) the amount of control the alleged employer exerted on the employee; and (2) whether the alleged employer had the power to hire, fire, or modify the employment condition of the employee. *See, e.g., Welch,* 57 F.3d at 1011; *Wirtz v. Lone Star Steel Co.,* 405 F.2d 668, 669–70 (5th Cir.1968);[2] *Blalock,* 33 F.Supp.2d at 999. Defendants have failed to present any evidence from which the Court could find that they do not meet the statutory definition of employer set forth by the EPA, and consequently, they are not entitled to summary judgment on this basis.

### C. Equal Pay Act

The EPA prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work. *See* 29 U.S.C. § 206(d)(1). Specifically, the EPA provides that: No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishments at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions....

29 U.S.C. § 206(d)(1). When Congress enacted the EPA, its purpose was to remedy what was perceived to be a serious and

---

**2.** In *Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir. Nov.3, 1981) (*en banc*), the Eleventh Circuit adopted as binding prec-

edent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.; *Blalock,* 33 F.Supp.2d at 999.

endemic problem of employment discrimination in private industry—the fact that the wage structure in many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same.

■ *Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974) (citations omitted). To establish a *prima facie* case under the EPA, the plaintiff must show "that an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility.'" *Schwartz v. Fla. Bd. of Regents,* 807 F.2d 901, 907 (11th Cir.1987) (quoting *Corning Glass Works,* 417 U.S. at 195, 94 S.Ct. 2223). *Accord, Irby v. Bittick,* 44 F.3d 949, 954 (11th Cir.1995). Thus, establishing the *prima facie* case requires comparison of the plaintiff's work and earnings to that of a person of the opposite sex; the person of the opposite sex to whom a plaintiff compares herself, or in this case, himself, for purposes of showing a wage discrepancy is referred to as a "comparator." *Gosa v. Bryce Hosp.,* 780 F.2d 917, 918 (11th Cir.1986).

■ A court's resolution of a plaintiff's claim that the work he performed is "equal" to that of the comparator does not depend simply on a comparison of job titles or classifications, but on a comparative analysis of actual job requirements and performance. 29 C.F.R. § 1620.13(e); *Pearce v. Wichita County, City of Wichita Falls, Tex., Hosp. Bd.,* 590 F.2d 128, 133 (5th Cir.1979) (while the job title is entitled to some weight in the assessment of comparative responsibility the actual job content is dispositive). Thus, in addressing whether an EPA plaintiff and his comparator have performed equal work within the meaning of the *prima facie* case, a court

must examine the effort, skill, and responsibility of the plaintiff and the comparator. "Effort" as that term is used in connection with a *prima facie* case under the EPA "is concerned with the measurement of the physical or mental exertion needed for the performance of a job." *Pearce,* 590 F.2d at 133 (quoting 29 C.F.R. § 800.127 (1977)). On the other hand, "skill" is used to refer to factors such as "experience, training, education, and ability." *Id.* (quoting 29 C.F.R. § 800.125 (1977)). Finally, "responsibility" is used to refer to the "degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." *Id.* (quoting 29 C.F.R. § 800.130 (1977)).

"The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." *Waters v. Turner, Wood, & Smith Ins. Agency, Inc.,* 874 F.2d 797, 799 (11th Cir.1989).

> When Congress enacted the Equal Pay Act, it substituted the word "equal" for "comparable" to show that "the jobs involved must be virtually identical, that is, they would be very much alike or closely related to each other." The restrictions in the Act were meant "to apply only to jobs that are substantially identical or equal."

■ *Brennan v. City Stores, Inc.,* 479 F.2d 235, 238 (5th Cir.1973). Moreover, binding precedent from the Eleventh Circuit recognizes that

> "[b]y substituting the term 'equal work' for 'comparable work,' which was originally suggested, Congress manifested its intent to narrow the applicability of the Act." Congress intended to permit employers wide discretion in evaluating work for pay purposes. Thus, although employees do not have to prove jobs are identical, they have the heavy burden of proving "substantial identity of job functions."

*Waters,* 874 F.2d at 799 (quoting *Hodgson v. Golden Isles Convalescent Homes, Inc.,* 468 F.2d 1256, 1258 (5th Cir.1972)). *Accord, Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1533 (11th Cir. 1992) ("The jobs held by the employees of opposite sexes need not be identical; rather, they need only be substantially equal.") A court examining whether jobs are substantially equal must examine the actual duties of the positions because a "controlling factor under the Equal Pay Act is job content—the actual duties the respective employees are called upon to perform." *Pearce,* 590 F.2d at 133. Indeed, where a plaintiff's job does not include additional significant responsibilities performed by the comparators who are paid more money, the requisite substantial identity of job functions requirement of the *prima facie* case is not met, and the employer is entitled to summary judgment. *Waters,* 874 F.2d at 800.

■ "Once a *prima facie* case is demonstrated, to avoid liability the employer must prove by a preponderance of the evidence that the differential is justified by one of four exceptions set forth in the EPA." *Irby,* 44 F.3d at 954 (internal quotations and citations omitted). The four affirmative defenses available to the employer are: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any additional factor other than sex. *See* 29 U.S.C. § 206(d)(1). Importantly, a defendant invoking an affirmative defense under the EPA must show that the factor of sex provided no basis for the wage differential. *Id. Accord, Gosa,* 780 F.2d at 918 (the requirements for proving an exception are not met unless the factor of sex provides no part of the basis for the wage differen-

tial). A defendant's burden in establishing the application of one of the exceptions is a heavy one. *See Corning Glass Works,* 417 U.S. at 196–97, 94 S.Ct. 2223. When the defendant overcomes the burden, the plaintiff must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential. *See Schwartz,* 954 F.2d at 623. If plaintiff is able to create the inference of pretext, there is an issue which should be reserved for trial; otherwise summary judgment is appropriate.

Defendants argue that Nixon cannot establish a *prima facie* case under the Equal Pay Act because all regular bus drivers, male and female, have the same job description and are paid from the same salary scale. These facts are not disputed. While it is certainly true that with respect to base salary paid, there is no disparity in pay for males and females holding the regular bus driver position, Nixon's complaint has to do not with the regular compensation paid as base salary, but the additional compensation paid to some of the drivers which he does not receive. It is undisputed that Nixon did not receive the additional daily compensation and that at least one driver of the opposite sex, Smith, did receive additional daily compensation. The question for this Court then is whether Smith and Nixon's jobs were substantially identical and whether the performance of their jobs required equal skill, effort and responsibility. In this analysis the fact that Smith and Nixon share the same job title with the job description is relevant, but not dispositive. The key factor is whether their actual duties are substantially identical.[3] The parties have presented facts to the Court having to do with

---

**3.** While their job duties are not identical, they need not be for Nixon to establish a *prima* *facie* case.

the actual duties of Nixon and his comparator and the effort[4] expended by Nixon, Smith, and other drivers in the course of their performance of their duties as regular bus drivers. Viewed in the light most favorable to the nonmovant, Nixon, this evidence creates an arguable basis from which a reasonable jury could find that Nixon has established a *prima facie* case under the EPA because he has shown that his position was substantially identical to Smith's position.

 Although Nixon has offered sufficient evidence to satisfy the elements of the *prima facie* case, summary judgment may still be appropriate provided Defendants make an adequate showing of evidence that the pay disparity falls within one of the four exceptions to the EPA and Nixon offers no evidence that the proffered explanation is pretextual. Defendants argue that the disparity between Nixon's pay and Smith's pay had nothing to do with Nixon's sex and invoke the fourth exception to the EPA which allows differential pay based on any additional factor other than sex so long as sex provided no basis for the wage differential.

As previously explained, Nixon and Smith received the same base salary. The only disparity between their pay was that Smith received an additional sum for transporting a student to the Alternative School and Nixon did not receive additional money for transporting students to the Alternative School. Defendants have presented undisputed evidence that three of five regular bus drivers who drove children to the Alternative School received the same additional daily sum for transporting the Alternative School students. Of these three who received the additional compensation, two were male and one was female. The two drivers who were not compensat-

ed were Nixon and a woman. At first blush, these undisputed facts do not betray any sex based biases. Defendants contend that the reason that some drivers received the additional daily pay and others did not had to do with whether the drivers had to driver an extra circuit of their routes and go substantially out of their way in order to transport the Alternative School students. The drivers who were paid did and the drivers who were paid did not. Defendants' desire to compensate Brown, Hunter, and Smith for the additional effort they expended in performing these duties, constitutes evidence that the differential was based on a factor other than sex. Nixon has offered no evidence creating a genuine issue of material fact with respect to whether this reason is pretextual. No reasonable jury could find based on this evidence that the sex of the driver was the reason for the additional pay. Put another way, no reasonable inference arises from these undisputed facts that the fact that Smith was a woman was the reason she received additional compensation for transporting the student to the Alternative School. Defendants had bona fide, nondiscriminatory reasons having nothing to do with sex for compensating Smith at a higher rate than Nixon. Consequently, Defendants have established as a matter of law that any pay disparity was based on a "factor other than sex." Accordingly, summary judgment is appropriate.

### D. Nixon's Contentions Regarding Sex Discrimination Other Than Pay

To the extent that Nixon makes various arguments about whether it was discriminatory for him to be required to perform certain tasks which he contends female employees were not required to perform,

---

4. While the comparison of duties may also include an analysis of the relative responsibility and skill of the plaintiff and the compara- tor, the issue in this case really boils down to the effort factor.

 

the Court notes that such claims are disparate treatment claims which could have been pursued pursuant to Title VII, but which have no relevance to his EPA claims. *See, e.g., Waters,* 874 F.2d at 800–01 (explaining the differences between EPA and Title VII claims); *Hodgson,* 468 F.2d at 1258–59 (declining to address claims of disparate treatment relating to job assignments under the EPA and noting that such claims presented questions to be resolved under Title VII and that "[c]ourts must be cautious not to apply improperly one Congressional act to achieve a purpose for which another act was intended").

## VI. CONCLUSION

For the reasons stated above, it is hereby ORDERED as follows:

(1) The Motion for Summary Judgment on Behalf of Defendants Autauga County Board of Education, Larry Butler, Dot Waller, Jerry De Bin, Ledronia Goodwin, Ken Hollon, Joe Turner, Paul Young, and Purvis Johnson (Doc. # 13) filed on April 24, 2003 is GRANTED.

(2) The pretrial and trial previously scheduled in this case are CANCELLED. A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.

### *FINAL JUDGMENT*

In accordance with the prior proceedings, opinions, and orders of the Court, it is the ORDER, JUDGMENT, and DECREE of the Court that:

(1) Judgment be and is hereby entered in favor of the Defendants, Autauga County Board of Education, Larry Butler, Dot Waller, Jerry DeBin, Ledronia Goodwin, Ken Hollon, Joe Turner, Paul Young, and Purvis Johnson, and against the Plaintiff,

Larry Nixon, with Plaintiff taking nothing by his Complaint.

(2) Costs are taxed against Plaintiff, Larry Nixon, for which execution may issue. The Clerk of the Court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.