Jane Marie HUNDERTMARK, Plaintiff-Appellee,

v.

STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION, The Honorable Ben G. Watts, Secretary, Defendant-Appellant.

No. 98-4924.

United States Court of Appeals,

Eleventh Circuit.

March 7, 2000.

Appeal from the United States District Court for the Southern District of Florida. (No. 98-00002-CIV-ASG), Alan S. Gold, Judge.

Before COX and BARKETT, Circuit Judges, and FAY, Senior Circuit Judge.

PER CURIAM:

Plaintiff, Jane Marie Hundertmark, filed a complaint against the Florida Department of Transportation ("FDOT") and its secretary Ben G. Watts, alleging, *inter alia,* a violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA").[1]  The defendants moved to dismiss, claiming that the Eleventh Amendment bars suit against the State of Florida for claims under the Equal Pay Act. The district court denied the motion to dismiss, ruling that Congress had amended the Equal Pay Act and abrogated the States' sovereign immunity pursuant to § 5 of the Fourteenth Amendment and therefore the Eleventh Amendment did not bar an action against the State in Federal Court.  We AFFIRM.

We review the district court's order denying the State's motion to dismiss based on the Eleventh Amendment's grant of sovereign immunity *de novo.  See Kimel v. State of Florida Board of Regents,* 139 F.3d 1426, 1428 (11th Cir.1998).

---

[1]The plaintiff also alleged discrimination under Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e and the Florida Human Rights Act, Fla. Stat. § 760.01. The district court dismissed the plaintiff's Florida Human Rights Act claim on Eleventh Amendment grounds and dismissed the Title VII claim against Secretary Watts.  None of these issues was appealed.

We must apply a two-part test to determine whether Congress has constitutionally abrogated the States' sovereign immunity under the Equal Pay Act. First, we determine whether Congress has unequivocally expressed its intent to abrogate the States' sovereign immunity; and second, we determine whether Congress has acted pursuant to a valid exercise of power. *See Kimel v. Florida Board of Regents,* 528 U.S. ----, 120 S.Ct. 631, 640, --- L.Ed.2d ---- (2000), *citing Seminole Tribe v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The State concedes that Congress sufficiently expressed its intent to subject the States to suit under the Equal Pay Act. Therefore, we turn to the sole issue raised in this appeal—whether Congress enacted the Equal Pay Act pursuant to a valid exercise of its § 5 remedial power under the Fourteenth Amendment.

The determination of whether Congress acted pursuant to a valid exercise of its § 5 power under the Fourteenth Amendment requires us to consider two questions; first, whether Congress exercised its § 5 power when it applied the Equal Pay Act to the States despite the failure of Congress to explicitly state the basis of its power, and second, whether extension of the Equal Pay Act to the States is within Congress's § 5 powers. Congress acts pursuant to a valid exercise of its section five power under the Fourteenth Amendment if the statute purporting to do so (1) may be regarded as an enactment to enforce the Equal Protection Clause, (2) is plainly adapted to that end, and (3) is consistent with and not prohibited by the letter of the constitution. *See Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966).

Congress may not subject the States to suit under its Article I, Commerce Clause powers. *See Seminole Tribe v. Florida,* 517 U.S. 44, 72-73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). However, "[s]ection 5 of the Fourteenth Amendment does grant Congress the authority to abrogate the States' sovereign immunity." *Kimel,* 120 S.Ct. at 644. The original enactment of the Equal Pay Act in 1963 applied only to private employers and stated that Congress was legislating pursuant to its powers under the Interstate Commerce Clause. In 1974, when Congress extended the Equal Pay Act to the States, Congress did not state the basis for its power to abrogate the States' sovereign immunity. This lack of language by Congress stating

2

the basis of its power to legislate is not fatal because the Supreme Court has acknowledged the long-recognized rule that "[t]he constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise." *Equal Employment Opportunity Commission v. Wyoming,* 460 U.S. 226, 244, n. 18, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), *quoting Woods v. Miller,* 333 U.S. 138, 144, 68 S.Ct. 421, 92 L.Ed. 596 (1948). Therefore, we conclude that Congress need not explicitly state the basis of its power to legislate in order to validly exercise its § 5 enforcement powers.[2]

The plain language of the statute indicates that its purpose is to prevent and combat gender discrimination in the provision of wages. 29 U.S.C. § 206(d)(1) ("No employer having employees subject to any provisions of this section shall discriminate ... between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work...."). The Supreme Court has repeatedly found that combating gender discrimination is a valid goal of the Fourteenth Amendment. *See, e.g., United States v. Virginia,* 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). Regardless of whether one finds that the EPA was appropriately enacted, it is indisputable that it was enacted to enforce the protections of the Equal Protection Clause.

---

[2]Every other Circuit to consider this issue has reached the same conclusion. *See O'Sullivan v. Minnesota*, 191 F.3d 965, 967-68 (8th Cir.1999); *Anderson v. State Univ. of N.Y.,* 169 F.3d 117, 120 (2d Cir.1999) (per curiam), judgment vacated and remanded for further consideration in light of *Kimel, State Univ. of N.Y. v. Anderson,* --- U.S. ----, 120 S.Ct. 929, --- L.Ed.2d ---- (2000) (Mem.); *Ussery v. Louisiana,* 150 F.3d 431, 436-37 (5th Cir.1998), *cert. dismissed,* --- U.S. ----, 119 S.Ct. 1161, 143 L.Ed.2d 225 (1999) (No. 98-739); *Varner v. Illinois State Univ.,* 150 F.3d 706, 712-14 (7th Cir.1998) judgment vacated and remanded for further consideration in light of *Kimel, Illinois State Univ. v. Varner,* --- U.S. ----, 120 S.Ct. 928, --- L.Ed.2d ---- (2000) (Mem.); *Timmer v. Michigan Dep't of Commerce,* 104 F.3d 833, 838 (6th Cir.1997); *Usery v. Charleston County Sch. Dist.,* 558 F.2d 1169, 1171 (4th Cir.1977); *Usery v. Allegheny County Inst. Dist.,* 544 F.2d 148, 155 (3d Cir.1976).

Additionally, the Supreme Court's most recent decision in this area, *Kimel v. State of Florida Board of Regents,* 528 U.S. ----, 120 S.Ct. 631, --- L.Ed.2d---- (2000), assumes without analysis that the ADEA was amended pursuant to Congress's § 5 enforcement powers. Because the ADEA, like the Equal Pay Act, was amended without specific language stating the basis of Congress's power, that assumption by the Supreme Court supports the notion that Congress need not specifically address the basis of its power to legislate.

Because we have determined that Congress exercised its § 5 powers when it amended the Equal Pay Act, we must now determine whether the application of the Equal Pay Act to the States is within Congress's § 5 enforcement powers. We hold that the extension of the Equal Pay Act to the States is within Congress's § 5 enforcement powers. Congress is vested with the power to enforce the Fourteenth Amendment, but not the power to determine the substance of the Fourteenth Amendment's restrictions. *See City of Boerne,* 521 U.S. at 519, 117 S.Ct. 2157. The "ultimate interpretation and determination of the Fourteenth Amendment's substantive meaning remains the province of Judicial Branch." *Kimel,* 120 S.Ct. at 644. However, " 'Congress must have wide latitude in determining where [the line between remedial and substantive legislation] lies.' " *Id., quoting City of Boerne,* at 519-20, 536, 117 S.Ct. 2157. With that in mind, the Supreme Court elucidated the "congruence and proportionality test," holding that "[t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.*

The Court has applied the "congruence and proportionality" test three times, each time holding that Congress had exceeded the scope of its enforcement power under § 5 of the Fourteenth Amendment. *See Kimel v. Florida Bd. of Regents,* 528 U.S. ----, 120 S.Ct. 631, 645, --- L.Ed.2d ---- (2000) (holding that the application of the Age Discrimination in Employment Act of 1967 to the States is beyond Congress's power to enforce under § 5 of the Fourteenth Amendment); *Florida Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank,* 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999) (holding that the Patent Remedy Act in so far as it subject the States to patent infringement suits is beyond Congress's § 5 power to enforce under the Fourteenth Amendment); *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) (holding that the Religious Restoration Freedom Act of 1993 is beyond Congress's § 5 power to enforce under the Fourteenth Amendment). In each case, the Court held that the legislative record of the Acts failed to identify "widespread and persisting deprivation of constitutional rights" of the sort Congress has faced in enacting proper prophylactic § 5 legislation. *Florida Prepaid,* 119 S.Ct. 2199, *citing*

4

*City of Boerne,* 521 U.S. at 526, 117 S.Ct. 2157; *see also Kimel,* 120 S.Ct. at 647-49. Additionally, the Court held that each Act at issue was "so out of proportion to a supposed remedial or preventive objective that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior." *Kimel,* at 647; *Florida Prepaid,* 119 S.Ct. 2199; *City of Boerne,* at 531-32, 117 S.Ct. 2157. The means used by Congress in RFRA, the ADEA, and the Patent Remedy Act, were not congruent and proportional to the injuries Congress attempted to remedy.

Congruence and proportionality require us to balance the injury that Congress has attempted to remedy against the means Congress has chosen to achieve its remedial purpose. Under the Equal Pay Act, Congress sought to remedy the injury of intentional gender-based wage discrimination. Unlike the legislative records in the ADEA, RFRA, and the Patent Remedy Act, the legislative record of the Equal Pay Act reflects that Congress did find substantial gender-based wage discrimination in the workplace. Indeed, the Supreme Court has recognized that

> Congress' purpose in enacting the Equal Pay Act was to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry—the fact that the wage structure of "many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same."

*Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974) (citations omitted). While it is true that Congress has not made similar findings with respect to wage discrimination in the public sector, such findings are not fatal because gender discrimination is a problem of national import. *See City of Boerne,* 521 U.S. at 531-32, 117 S.Ct. 2157. One need look no further than President Clinton's year 2000 State of the Union Address to be reminded that in this country, in many areas of the workforce, women still only receive approximately seventy-five cents for every dollar paid to men. *See also* U.S. Bureau of the Census, Current Population Reports, Series P60-200, Money Income of Households, Families, and Persons in the United States: 1997 (in 1996, women in the United States earned only seventy-four cents for every dollar earned by men).

Against the substantial injury of gender-based wage discrimination we balance the means Congress used to remedy the injury. Under the Act, liability for wage discrimination is only actionable if an employer cannot provide any factor other than gender to justify the wage disparity. This framework is congruent with the Supreme Court's current standard for reviewing cases of gender-based discrimination under the Equal Protection Clause of the Fourteenth Amendment.[3] To protect itself against liability for discrimination under the Equal Protection Clause, a State must show "exceedingly persuasive justification" for discriminating on the basis of gender. *United States v. Virginia,* 518 U.S. 515, 532-34, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996). At the very least, the State must show "that the [challenged] classification serves 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.' " *Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (citations omitted). Therefore, the Equal Pay Act validly enforces and remedies already existent constitutional rights; it does not create any more substantive rights than those already deemed to exist.

In contrast, the ADEA, challenged and overturned in *Kimel,* subjected the States to suits for classifications based on age, which would only be subject to rational basis review under the Equal Protection Clause. The State would not run afoul of the Equal Protection Clause for a classification based on age as long as the State could portend that the classification was rationally related to a legitimate state interest. Therefore, the ADEA, which attempted to subject the States to suit for any classifications on the basis of age, exceeded Congress's § 5 enforcement powers because it created additional rights. By prohibiting all discrimination based on an individual's age, the ADEA prohibited substantially more state employment decisions and practices than would be held unconstitutional under a rational basis standard. *See id.* 120 S.Ct. at 648.[4]

---

[3]Since 1971, classifications based on gender have been "subject to scrutiny under the Equal Protection Clause." *Reed v. Reed,* 404 U.S. 71, 75, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

[4]In *Kimel,* the Court contrasted age with race and gender, stating that "[a]ge classifications, *unlike governmental conduct based on race or gender,* cannot be characterized as 'so seldom relevant to the

6

Conversely, the Equal Pay Act's prohibition on discrimination in pay and other employment benefits based on gender is congruent with decisions and practices that are deemed unconstitutional under a heightened scrutiny analysis.

Therefore, because the Equal Pay Act, unlike the ADEA, RFRA, and the Patent Remedy Act, satisfies the congruence and proportionality test expressed by the Supreme Court, it is a valid exercise of Congress's enforcement powers under § 5 of the Fourteenth Amendment. The judgment of the district court is AFFIRMED.

---

achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy.' " *Kimel,* 120 S.Ct. at 645 (emphasis added) (citations omitted).