[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10003
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cv-01809-MSS-TBM

LILLIAN LIMA,

Plaintiff - Appellant,

versus

FLA. DEPARTMENT OF CHILDREN AND FAMILIES, et al.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 21, 2015)

Before JORDAN, ROSENBAUM and JULIE CARNES, Circuit Judges.

PER CURIAM:

Lillian Lima appeals the district court's order granting partial summary judgment and entering final judgment in favor of the Florida Department of Children and Families on her discrimination claim under the Equal Pay Act, 29 U.S.C. §§ 206(d) and 215(a)(3). Ms. Lima argues that the district court erred in concluding that she did not establish a *prima facie* case under the Equal Pay Act. She contends that the district court mistakenly found that (1) she failed to show her job was substantially similar to the job of her alleged comparator, and that (2) she failed to demonstrate that DCF's justification for the pay deferential was pretextual. After a review of the record and the parties' briefs, we affirm.

## I

Florida agencies use class titles—usually broad and generic titles—to designate employees in agency human resource systems. There may be two individuals under the same class title who perform very different jobs and tasks.

Ms. Lima began her career with DCF in 2007 as an "Operations Review Specialist" with an annual salary of $59,999.94. DCF hired Ms. Lima for their independent living department because of her experience in youth development programs.

Ms. Lima created an initiative called "Breaking the Cycle." She introduced the initiative to the then-Secretary of DCF, George Sheldon, in late 2010. She also proposed the creation of a new department, the Office of Minority Affairs, to

2

implement the initiative and suggested that she be given the working title of "Director of the Office of Minority Affairs." Mr. Sheldon approved of the idea but wanted to wait until after the holidays before implementing any changes. Over the holidays, however, Mr. Sheldon resigned as Secretary of DCF.

David Wilkins became the new Secretary of DCF. When Secretary Wilkins began his tenure with DCF in January of 2011, Ms. Lima informed him of her proposal to Mr. Sheldon to create the Office of Minority Affairs and her desire to be promoted to "Director of the Office of Minority Affairs." One of Secretary Wilkins' objectives as the new Secretary of DCF was to improve the public image of the agency, which had suffered several public scandals regarding the competence of DCF employees. In March of 2011, he created the Office of External Affairs and hired John Davis as its Director. Mr. Davis was given an annual salary of $84,999.98, and his responsibilities included proactively combating DCF's negative publicity through marketing and communications. Mr. Davis' class title was "Operations and Management Consultant Manager." His working title was "Director of External Affairs," and he reported directly to the DCF Chief of Staff, Vivian Mytretus.

As Director, Mr. Davis focused on creating positive press for DCF by promoting some of the statewide programs and by working directly with DCF's public information officers. Additionally, Mr. Davis was tasked with developing the Office of External Affairs by creating new programs such as the "Camps for Champions," a

3

summer camp reuniting foster children with their siblings. The Office of External Affairs also implemented Ms. Lima's "Breaking the Cycle" initiative.

In June of 2011, DCF assigned Mr. Davis supervisory responsibilities and changed his class title from Operations and Management Consultant Manager to "Senior Management Analyst Supervisor." His salary and working title remained the same. That same month, Ms. Lima was told by her supervisor that she would be transferred to the Office of External Affairs and that her old position had been eliminated due to departmental budget cuts. She would begin to report to Mr. Davis, who was the Director of the Office of External Affairs.

In July of 2011, DCF changed Ms. Lima's class title to Operations and Management Consultant Manager. Her annual salary remained the same at $59,999.94. As Operations and Management Consultant Manager, Ms. Lima was tasked with focusing on youth development with an emphasis on culturally specific programming. She continued to develop the "Breaking the Cycle" initiative and began working on obtaining the contracts necessary to implement the program. Ms. Lima also performed other duties at Mr. Davis' request, such as representing DCF on assigned committees and workgroups.

Ms. Lima inquired about receiving a raise in her new position as Operations and Management Consultant Manager and was directed to submit her request to Mr. Davis, her new supervisor. Ms. Lima asked Mr. Davis for a 25% increase in salary to

compensate her for her new duties. Mr. Davis told her that he would need to speak to Ms. Myrtetus, who controlled the budget. Mr. Davis explained to Ms. Lima that it would be difficult for her to receive a pay raise when DCF was experiencing budget cuts. Ms. Myrtetus denied Ms. Lima's request for a raise. Ms. Lima then e-mailed Secretary Wilkins regarding her pay raise. He told Ms. Lima she would need to "prove her worth" before receiving a raise because the budget was tight.

Ms. Lima received the written job description for her position as Operations and Management Consultant Manager later that month, which included many of the original tasks and responsibilities that Ms. Lima had drafted, but Ms. Myrtetus added additional tasks and responsibilities. The additional tasks involved representing DCF on assigned committees, workgroups, taskforces, and performing other duties relayed by Mr. Davis. She also gave Ms. Lima the working title of "Manager of Minority Relations." Ms. Lima explained to Ms. Myrtetus that because her new position carried the title of "Manager," rather than "Director" she felt the new job was an unwarranted demotion and that she was under the impression, after having spoken to Secretary Wilkins about her proposal in January of 2011, that she would be promoted to the status of "Director." Ms. Myrtetus, however, explained that because Ms. Lima was now reporting to Mr. Davis, who was classified as a "Director," Ms. Lima could not also be classified as a "Director" under DCF's management structure.

5

When Ms. Lima later refused to perform her duties as Operations and Management Consultant Manager, she was terminated in August of 2011. In May of 2013, Ms. Lima filed suit against DCF and Secretary Wilkins asserting, amongst other claims, that Secretary Wilkins and DCF violated the Equal Pay Act by paying her less than Mr. Davis, a male employee whose job was substantially equal to hers, when they both held the title of Operations and Management Consultant Manager.

In November of 2014, the district court partially granted the defendants' motion of summary judgment, because it concluded that Ms. Lima had failed to establish a *prima facie* case under the EPA. The district court found that Ms. Lima had failed to prove that her job was "substantially similar" to that of her alleged comparator, Mr. Davis, and that the defendants had successfully met their burden in establishing that the difference in pay was based on a factor other than gender. Ms. Lima's other claims proceeded to trial, but the jury found in favor of the defendants. Ms. Lima now appeals the district court's November 2014 order granting partial summary judgment on her EPA claim.

She argues that the she presented a proper *prima facie* case and that the defendants failed to meet their burden of establishing that the pay differential was not based on gender. Ms. Lima, on appeal, relies heavily on the deposition testimony of DCF's classification compensation manager to establish that their jobs were substantially similar and that Mr. Davis was not performing additional tasks, such as

developing an outreach strategy, until after he was promoted to Director in June of 2011. Finally, she contends that the district court applied the wrong burden-shifting test when it concluded that defendants had met their burden in establishing a nondiscriminatory reason for the pay differential.

## II

We review a district court's grant of summary judgment *de novo*, viewing all of the facts in the light most favorable to the non-moving party. *Vessels v. Atl. Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). Summary judgment is appropriate only when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997). "If no reasonable jury could return a verdict in favor of the nonmoving party, there is no genuine issue of material fact and summary judgment will be granted." *Beal v. Paramount Pictures Corp.,* 20 F.3d 454, 459 (11th Cir.1994).

The Equal Pay Act prohibits sex-based discrimination in the workplace. 29 U.S.C. § 206(d)(1). *See Hundertmark v. Fla. Dep't of Transp.,* 205 F.3d 1272, 1275 (11th Cir. 2000) ("[The purpose of the EPA] is to prevent and combat gender discrimination in the provision of wages."). It dictates that men and women in the same establishment who perform jobs that require substantially equal skill, effort, and

7

responsibility under similar working conditions be paid equally. § 206(d)(1). *See also Hundertmark,* 205 F.3d at 1275.

We utilize a burden-shifting framework to determine whether, under the EPA, an employer illegally discriminated against an employee based on gender. *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995). The plaintiff must first establish a *prima facie* case under the EPA. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590 (11th Cir. 1994) (citing *Schwartz v. Fla. Bd. of Regents*, 807 F.2d 901, 907 (11th Cir. 1987)). To establish a *prima facie* case, the plaintiff must show that "the employer paid employees of opposite genders different wages for equal work for jobs [requiring] equal skill, effort, and responsibility, and which are performed under similar working conditions." *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077–78 (11th Cir. 2003).

Although "the plaintiff need not prove that her job and those of her comparators are identical[,] . . . the standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." *Mulhall*, 19 F.3d at 592 (internal quotation marks and citations omitted). The plaintiff needs to establish that "an employer pa[id] different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Arrington v. Cobb Cnty.,* 139 F.3d 865, 876 (11th Cir. 1998) (internal quotation marks and citations omitted). "The plaintiff need not prove that the job held by her male comparator is identical to hers; she must

demonstrate only that the skill, effort, and responsibility required in the performance of the jobs are substantially equal." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992) (internal quotation marks omitted). A plaintiff therefore fails to make a *prima facie* case of unequal pay if the job responsibilities of her alleged comparator were greater than her own. *See Waters v. Turner, Wood & Smith Ins. Agency, Inc.,* 847 F.2d 797, 799–800 (11th Cir. 1989) ("[T]he [employee] failed to [establish] a *prima facie* case of unequal pay because the job responsibilities of [her] male comparators were greater than her job responsibilities."). Although job titles are given some weight in the analysis, they are not dispositive. *Mulhall*, 19 F.3d at 592.

Once an employee has established a *prima facie* case under the EPA claim, the burden shifts to the employer to show by a preponderance of the evidence that the differential in pay is justified because it was "based on any [other] factor than sex." 29 U.S.C. § 206 (d)(1). *See also Mulhall,* 19 F.3d at 590 (citing *Brock v. Ga. Sw. Coll.*, 765 F.2d 1026, 1036 (11th Cir. 1985)). We have found in the past that such factors include "unique characteristics of the same job; . . . , an individual's experience, training, or ability; [and] . . . special exigent circumstances connected with the business." *Irby*, 44 F.3d at 955 (quoting *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1571 (11th Cir 1988)).

9

If the employer establishes a nondiscriminatory reason by a preponderance of the evidence, the burden shifts back to the employee to demonstrate that the employer's offered explanation is pretextual or otherwise offered as an after-the-fact justification for a gender-based difference. *See Irby*, 44 F.3d at 954. If the employee fails to meet this burden, summary judgment in favor of the employer is appropriate. *Steger*, 318 F.3d at 1078–79.

## A

The district court did not err in granting summary judgment in favor of DCF. Ms. Lima failed to establish a *prima facie* case of gender discrimination under the EPA, because she failed to show that her job was "substantially similar" to Mr. Davis' job. Ms. Lima asserts that Mr. Davis' responsibilities were unclear, and she was not fully aware of what Mr. Davis' duties were when he began at DCF as Operations and Management Consultant Manager. Therefore, a reasonable jury could conclude that he did not assume any additional tasks from those Ms. Lima had when she was Operations and Management Consultant Manager, until he was promoted to Director. The record, however, reflects the contrary.

In support of her contention that she and Mr. Davis had substantially similar jobs, Ms. Lima relies heavily on the deposition testimony of DCF's classification compensation manager, who explained the Operations and Management Consultant manager job description. The classification compensation manager also testified that

both Mr. Davis and Ms. Lima held the same classification title of Operations and Management Consultant Manager, albeit at different times. Although Ms. Lima and Mr. Davis briefly held the same class title of Operations and Management Consultant Manager at different times, we have held this is not dispositive. *See Mulhall*, 19 F.3d at 592 (holding that although class titles are a relevant part of the inquiry as to whether two individuals had substantially similar jobs, it is not the end of inquiry). DCF's management structure, moreover, reveals that the class title of Operations and Management Consultant Manager did not necessarily reflect equal positioning within the Department. For example, when Mr. Davis held that class title, he reported directly to Ms. Myrtetus, DCF's Chief of Staff, but when Ms. Lima held the title, she reported directly to Mr. Davis, the Director of the Office of External Affairs.

The record here reflects that Mr. Davis' assigned tasks and objectives during his tenure as Operations and Management Consultant Manager were different than those of Ms. Lima when she held the position. The record shows that Mr. Davis, unlike Ms. Lima, was charged with improving the current community–based programs by comparing them to each other and replicating the effective methods he discovered when he was Operations and Management Consultant Manager. Mr. Davis also served as the head of the Office of External Affairs and was charged with leading that office, implementing Secretary Wilkins' objectives, and improving DCF's negative publicity. Additionally, Mr. Davis was responsible for everything that came out of the Office of

11

External Affairs. Mr. Davis' job responsibilities, in short, were greater than Ms. Lima's. *See Evans v. Books–A–Million*, 762 F.3d 1288, 1298 (11th Cir. 2014). Although Ms. Lima argues that a reasonable jury could find that Mr. Davis did not perform those tasks until after his promotion, she fails to offer any evidence suggesting this was the case.

When Ms. Lima assumed the position of Operations and Management Consultant Manager, she performed none of the larger tasks carried out by Mr. Davis. Although both Mr. Davis and Ms. Lima were involved in minority affairs and the development and implementation of community outreach programs like "Breaking the Cycle," Mr. Davis' job involved additional responsibilities. *See Evans*, 762 F.3d at 1298 (holding that "the employee could not show similarity of work between her and the alleged comparator because she never performed the additional tasks for her alleged comparator performed"). Accordingly, Mr. Davis is not a valid comparator. We therefore hold that the district court did not err in concluding that Ms. Lima failed to show a *prima facie* case under the EPA.

**B**

As we find that the district court did not err in holding that Ms. Lima failed to establish a prima facie case under the EPA because she and Mr. Davis did not hold substantially similar jobs, we need not address whether the district court applied the

wrong burden shifting standard, when it held that Ms. Lima had failed to rebut the defendants' nondiscriminatory justification for the pay differential.

## III

We affirm the district court's partial grant of summary judgment on Ms. Lima's EPA claim.

**AFFIRMED.**