[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11378
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00195-ODE

DENISE DIMINO,

Plaintiff-Appellant,

versus

GEORGIA DEPARTMENT OF ADMINISTRATIVE SERVICES,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 12, 2015)

Before TJOFLAT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Denise Dimino appeals from the district court's order granting summary judgment to her former employer, the Georgia Department of Administrative Services ("DOAS").  Relevant to this appeal, Dimino alleged that DOAS discriminated against her by paying her less than similarly situated male employees in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

We review a district court's grant of summary judgment de novo, viewing all of the evidence in the light most favorable to the non-moving party.  *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005) (per curiam).  Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

## I.

The purpose of the EPA "is to prevent and combat gender discrimination in the provision of wages."  *Hundertmark v. Fla. Dep't of Transp.*, 205 F.3d 1272, 1275 (11th Cir. 2000) (per curiam).  The statute requires equal pay for men and women who perform jobs for the same employer in the same establishment that require substantially equal skill, effort, and responsibility under similar working conditions.  29 U.S.C. § 206(d)(1); *see also Hundertmark*, 205 F.3d at 1275.  We use a burden-shifting framework to determine whether, under the EPA, an

employer illegally discriminated against an employee on the basis of that employee's sex. *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995).

The plaintiff establishes a prima facie case under the EPA by showing that "the employer paid employees of opposite genders different wages for equal work for jobs [requiring] equal skill, effort, and responsibility, and which are performed under similar working conditions." *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077–78 (11th Cir. 2003) (quotation marks and citations omitted). "The plaintiff need not prove that the job held by her male comparator is identical to hers; she must demonstrate only that the skill, effort, and responsibility required in the performance of the jobs are 'substantially equal.'" *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992) (quoting 29 U.S.C. § 206(d)(1)). A plaintiff therefore fails to make a prima facie case of unequal pay if the job responsibilities of her alleged comparator were greater than her own. *See Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799–800 (11th Cir. 1989) (per curiam). Although job titles are given some weight in the analysis, they alone are not dispositive as to the degree of similarity between different jobs' responsibilities. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 592 (11th Cir. 1994).

Once the plaintiff makes out a prima facie case, the employer must prove by a preponderance of the evidence that the pay differential is justified by one of the exceptions set forth in the EPA. *Irby*, 44 F.3d at 954. The four affirmative

3

defenses an employer can show are "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). The burden of proof regarding these defenses is "a heavy one" because the employer "must show that the factor of sex provided *no basis* for the wage differential." *Mulhall*, 19 F.3d at 590. Further, the employer must show that none of the decisionmakers, whether in middle or upper management, were influenced by gender bias. *See Anderson v. WBMG–42*, 253 F.3d 561, 566 (11th Cir. 2001). If the defendant meets its burden under the EPA, "the plaintiff must rebut the explanation by showing with affirmative evidence that [the employer's affirmative defense] is pretextual or offered as a post-event justification for a gender-based differential." *Irby*, 44 F.3d at 954.

As an initial matter, there is no merit to Dimino's claim that the magistrate judge and district court failed to consider the evidence in the light most favorable to her. A review of the record shows that the court cited to relevant evidence in the record when considering the facts, viewing them in the light most favorable to Dimino. Moreover, we find no error in the district court's conclusion that Tom Provancher is not a proper comparator because he and Dimino were not engaged in equal work. Provancher's title was that of "officer," Dimino's was "supervisor." Dimino admits that she reported to Provancher, and the record supports the

4

conclusion that Dimino reported only to Provancher.  Provancher's duties included development and implementation of the risk-management liability program; identification and negotiation of premiums, coverage, and deductibles; management of DOAS staff; and revaluation and recommendation of Georgia's liability coverage.  Dimino's duties included supervising, directing, and auditing third-party administrator Broadspire; managing the claims-handling process; settling claims up to $250,000; and acting as a liaison with the state attorney general's office.  She did not directly supervise any DOAS employees.  In light of this evidence, the district court properly concluded that Dimino and Provancher were not engaged in substantially equal work.  *See Waters*, 874 F.2d at 799–800.

　　We disagree, however, with the district court's conclusion that Ed Finnegan was not a comparator; based on the evidence submitted, Dimino at least presented a genuine issue of material fact on this point.  During the time Finnegan worked as State Auto Insurance Program Officer, he oversaw auto liability claims, handled customer-service issues, developed programs, and supervised subrogation and indemnification.[1]  Finnegan supervised two DOAS employees.  His program had a budget of about $10 million.  Dimino supervised six third-party contractors.  Her program had a budget of about $30 million.  Chris Risley, who was the Director of

---

[1]  Finnegan transferred to Director of Fleet Management in July 2010.  Dimino does not argue that this position was equal work.  Rather, she limits her claim regarding Finnegan to his position as Auto Program Officer.

the Risk Management Division, which housed Provancher's, Finnegan's, and Dimino's positions, thought that work done by Finnegan and Dimino was similar, and the two should have been paid roughly the same amount. Risley's testimony makes it at least debatable whether Dimino and Finnegan were engaged in equal work. *See B & B Cash Grocery*, 975 F.2d at 1534 ("If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment").

Nevertheless, DOAS was entitled to summary judgment because it offered an affirmative defense that Dimino cannot show is pretextual. According to DOAS, the State Personnel Administration ("SPA") determines the classifications for jobs based on duties, requirements, and qualifications, and it set a range of pay within each pay grade. DOAS had no control over this process. Dimino's job classification as a "supervisor" was not the same as Finnegan's, an "officer," and the different titles entail different pay scales. Thus, DOAS did not have the authority to pay Dimino the same salary as Finnegan.

To rebut this defense as pretext, Dimino points to comments by DOAS Assistant Commissioner Sherrie Southern that Dimino needed "polish" and that she did not embody Southern's idea of a "professional woman." But Dimino cannot show that these comments are evidence of pretext. *Cf. Anderson*, 253 F.3d at 566 (explaining that the employer must show that none of the decisionmakers,

6

whether in middle or upper management, were influenced by gender bias). Southern approved Dimino's promotion despite her concerns that Dimino lacked polish both verbally and in terms of her dress.  And Southern denied that Dimino's sex played any role in the decision.[2]  Moreover, DOAS submitted statistics showing that 74 of its 124 employees were female, including several in leadership positions.  Since January 1, 2011, DOAS had promoted 24 employees, 18 of whom were women.  And three of the five highest paid employees were women.  In light of this evidence, Dimino cannot show that DOAS's alleged affirmative defense was pretext, and DOAS was entitled to summary judgment on Dimino's EPA claim.

## II.

Title VII prohibits an employer from discriminating against an individual by paying that individual less on the basis of sex.  42 U.S.C. § 2000e–2(a)(1).  A plaintiff may prove such a discrimination claim either by showing direct evidence of discrimination or by indirect evidence, in which instance the familiar *McDonnell Douglas* burden-shifting framework applies.[3]  *Damon v. Fleming*

---

[2] Dimino argues for the first time on appeal that even if Southern did not set the applicable pay grade, she did have the authority to determine Dimino's salary within the grade.  Dimino then alleges that the discrimination is evident by Southern's decision to set Dimino's pay in the middle of the pay grade rather than the high end.  Because she raises this argument for the first time on appeal, we need not address it.  *See, e.g.*, *Hurley v. Moore*, 233 F.3d 1295, 1297 (11th Cir. 2000) (per curiam).

[3] A plaintiff can also create a triable issue of fact concerning an employer's discriminatory intent by presenting "a convincing mosaic of circumstantial evidence that would allow a jury to infer

7

*Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (citing

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d

668 (1973)).  To make a prima facie case of wage discrimination under Title VII,

the plaintiff must show that she is a member of a protected class, she received

lower wages than similarly situated comparators outside the protected class, and

she was qualified to receive a higher wage.  *Cooper v. S. Co.*, 390 F.3d 695, 734–

35 (11th Cir. 2004), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546

U.S. 454, 457, 126 S. Ct. 1195, 163 L. Ed. 2d 1053 (2006).

    Once the plaintiff establishes a prima facie case, the burden shifts to the

employer to present a legitimate, non-discriminatory reason for its action.  *Rojas v.*

*Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (per curiam).  If the defendant

meets its burden, the presumption of discrimination is rebutted and the employee

must show that the employer's reasons were pretext for discrimination.  *Id.*  A

plaintiff may show pretext by pointing to the "weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's rationale."

*Holland v. Gee*, 677 F.3d 1047, 1055–56 (11th Cir. 2012) (quotation marks and

citation omitted).  The plaintiff must show that the evidence, when viewed as a

whole, creates a reasonable inference that the employer engaged in discrimination.

---

intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quotation marks omitted).  Although Dimino raised this argument before the district court, she does not argue that she met this standard on appeal.  Thus, she has abandoned it.  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

*Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir. 2011). "In other words, the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308–09 (11th Cir. 2012) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997)). Although a comment unrelated to the adverse decision may contribute to a circumstantial case for pretext, it will usually not be sufficient absent some additional evidence supporting a finding of pretext. *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1229 (11th Cir. 2002).

Here, we agree that summary judgment was proper. First, the standard for setting out a prima facie case of wage discrimination under Title VII is less stringent that that required under the EPA. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 598 (11th Cir. 1994). Accordingly, because it is a close call whether Dimino established that Finnegan was a proper comparator under the EPA, the same analysis applies to the Title VII claim. For the reasons discussed above, the district court erred in finding that Dimino could not establish a prima facie case with respect to Finnegan. But Dimino's prima facie case using Provancher as a comparator fails for the same reasons as under the EPA.

Turning to the second part of the burden-shifting analysis, DOAS proffered a legitimate, non-discriminatory reason when it explained that the SPA determines job classifications and pay grades. Dimino argues that DOAS failed to meet its burden because it did not submit any evidence regarding the SPA guidelines. But DOAS submitted deposition testimony and sworn declarations from Risley, Townsend, and Southern to explain how salaries were determined. Thus, DOAS met its burden.

Moreover, although Dimino argues that DOAS cannot rely on its "honest belief" that SPA set salaries, Dimino is mistaken that the law limits "honest belief" to cases of misconduct. *See Woodard v. Fanboy, L.L.C.*, 298 F.3d 1261, 1265–66 (11th Cir. 2002) (explaining that a showing that a defendant has lied about the reasons for his acts—that he had a "dishonest belief" in the reasons—can be strong evidence that a defendant has acted with discriminatory intent).

Dimino must show that DOAS's reason for its salary decision is pretext for discrimination on the basis of her sex. Dimino again relies on Southern's statements to meet her burden. But, as discussed above, these statements do not show gender bias. Southern approved Dimino's promotion despite her alleged feeling that Dimino was not a professional woman. And Southern testified that Dimino's sex played no role in her decisions. Dimino has offered nothing to show that Southern's comments had any impact on Southern's salary decision.

Accordingly, we AFFIRM the district court's order granting summary judgment.

**AFFIRMED.**